# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ERNEST ALFRED G.,[1]                    ) Case No. EDCV 17-1130-JPR
                                        )
                   Plaintiff,           )
                                        ) **MEMORANDUM DECISION AND ORDER**
            v.                          ) **AFFIRMING COMMISSIONER**
                                        )
NANCY A. BERRYHILL, Acting              )
Commissioner of Social                  )
Security,                               )
                                        )
                   Defendant.           )
_____     )

## I.    PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed March 23, 2018, which the Court has taken under submission

_____

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

**II.  BACKGROUND**

On August 30, 2013, Plaintiff applied for DIB, alleging that he had been disabled since April 3, 2012,[2] because of depression, bipolar disorder, left-eye problems, anxiety, and high blood pressure.  (AR 152-55, 175-76.)  After his application was denied initially (AR 68-81) and on reconsideration (AR 83-95), he requested a hearing before an Administrative Law Judge (AR 109).  A hearing was held on December 2, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 37-67.)  In a written decision issued January 20, 2016, the ALJ found Plaintiff not disabled.  (AR 18-32.)  Plaintiff requested review (AR 11-14) and submitted additional medical evidence (AR 2, 255-63).  On April 14, 2017, the Appeals Council denied review, finding that the additional evidence did not provide a basis for changing the ALJ's decision.  (AR 1-7.)  Specifically, as to the March 26, 2016 medical-source statement from Plaintiff's treating psychiatrist, Dr. Salvador Arella, that is the focus of this appeal, the council found that the "new information is about a later time."[3]  (AR 2.)  This action

_____

[2] The ALJ and the parties refer to the disability-onset date as July 31, 2009.  (See, e.g., AR 18; J. Stip. at 2.)  That date appears to come from Plaintiff's Disability Report.  (AR 172.)  For the sake of argument, the Court considers whether Plaintiff was disabled at any time after the earlier, 2009 date.

[3] As of January 17, 2017, a claimant must show good cause for having failed to submit evidence to the ALJ before the Appeals Council will consider that evidence.  See § 404.970(b) (2017).  Although Plaintiff provided none, he apparently was not required to because he submitted the new evidence before January

1    followed.

2    **III. STANDARD OF REVIEW**

3        Under 42 U.S.C. § 405(g), a district court may review the

4    Commissioner's decision to deny benefits.  The ALJ's findings and

5    decision should be upheld if they are free of legal error and

6    supported by substantial evidence based on the record as a whole.

7    See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.

8    Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence

9    means such evidence as a reasonable person might accept as

10   adequate to support a conclusion.  Richardson, 402 U.S. at 401;

11   Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

12   is more than a scintilla but less than a preponderance.

13   Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

14   Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether

15   substantial evidence supports a finding, the reviewing court

16   "must review the administrative record as a whole, weighing both

17   the evidence that supports and the evidence that detracts from

18   the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,

19   720 (9th Cir. 1998).  "If the evidence can reasonably support

20   either affirming or reversing," the reviewing court "may not

21   substitute its judgment" for the Commissioner's.  Id. at 720-21.

22   **IV.  THE EVALUATION OF DISABILITY**

23       People are "disabled" for purposes of receiving Social

24   Security benefits if they are unable to engage in any substantial

25   gainful activity owing to a physical or mental impairment that is

26   expected to result in death or has lasted, or is expected to

27   _____

28   2017 (AR 255-63), though the council did not deny review until
     three months later (AR 1-7).

                                    3

last, for a continuous period of at least 12 months.  42 U.S.C.
§ 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.
1992).

    A.   <u>The Five-Step Evaluation Process</u>

    The ALJ follows a five-step sequential evaluation process to
assess whether a claimant is disabled.  20 C.F.R.
§ 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
Commissioner must determine whether the claimant is currently
engaged in substantial gainful activity; if so, the claimant is
not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

    If the claimant is not engaged in substantial gainful
activity, the second step requires the Commissioner to determine
whether the claimant has a "severe" impairment or combination of
impairments significantly limiting his ability to do basic work
activities; if not, the claimant is not disabled and his claim
must be denied.  § 404.1520(a)(4)(ii).

    If the claimant has a "severe" impairment or combination of
impairments, the third step requires the Commissioner to
determine whether the impairment or combination of impairments
meets or equals an impairment in the Listing of Impairments set
forth at 20 C.F.R. part 404, subpart P, appendix 1; if so,
disability is conclusively presumed.  § 404.1520(a)(4)(iii).

    If the claimant's impairment or combination of impairments
does not meet or equal an impairment in the Listing, the fourth
step requires the Commissioner to determine whether the claimant

has sufficient residual functional capacity ("RFC")[4] to perform his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 31, 2009, the alleged onset date. (AR 20.) At step two, she concluded that he had two severe medically determinable impairments: schizoaffective disorder and left-eye keratoconus. (Id.) She also found medically determinable impairments of obesity, hypertension, sleep apnea, hyperlipidemia, gastroesophageal reflux disease, and a history of left-knee meniscus tear, but she concluded that all were nonsevere. (AR 21-22.) At step three, she found that he

_____

[4] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017).

did not have an impairment or combination of impairments that met or equaled a Listing. (AR 22.)

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of medium work:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except he can occasionally lift and carry 50 pounds and frequently 25 pounds; he can sit, stand, and walk for up to six hours each in an eight-hour day; can push and pull as much as he can lift and carry. He can frequently climb stairs and ramps, balance, stoop, kneel, and crouch, and never crawl or climb ladders or scaffolds. He is limited to work that requires monocular vision. He should never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. He is capable of frequent supervisory contact, occasional contact with coworkers, and no contact with the public.

(AR 25.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform any past relevant work. (AR 30.) At step five, she determined that given his "age, education, work experience, and [RFC]," he could successfully perform numerous medium-level jobs available in the national economy. (AR 31-32.) Thus, she found Plaintiff not disabled. (AR 32.)

**V.    RELEVANT BACKGROUND**[5]

    A.    <u>Treating Physicians</u>

        1.    *Heritage Victor Valley Medical Group*

Plaintiff was initially treated for his mental impairments by his general practitioners at Heritage. (<u>See</u> AR 28, 265-325.) Before the alleged onset date, he saw Dr. Beverly J. Nester[6] for panic attacks (AR 300-01) and anxiety as well as his physical ailments (AR 291). He began taking Xanax[7] and Lexapro[8] as early as May 9, 2008. (AR 301.) Following the alleged onset date, he saw Dr. Nester five times in 2009 (AR 278-87) and was treated for psychiatric impairments on one of those visits: on December 10, 2009, when he was diagnosed with depressive disorder and given samples of Lexapro (AR 278-79).

On March 18, 2010, Plaintiff again saw Dr. Nester, who noted that he was "[n]egative for psychiatric symptoms," had "[n]o unusual anxiety or evidence of depression," and couldn't afford his Lexapro. (AR 274-77.)

---

[5] Because Plaintiff challenges the RFC based only on new evidence relating to his mental impairments, the Court does not address the evidence of his physical impairments.

[6] The record does not indicate Dr. Nester's medical specialty.

[7] Xanax is name-brand alprazolam, a benzodiazepine used to treat anxiety and panic disorders. <u>See</u> <u>Xanax</u>, WebMD, https://www.webmd.com/drugs/2/drug-9824/xanax-oral/details (last visited Jan. 7, 2019).

[8] Lexapro is name-brand escitalopram oxalate, which is used to treat depression and anxiety by helping to restore the balance of serotonin in the brain. <u>See</u> <u>Lexapro</u>, WebMD, https://www.webmd.com/drugs/2/drug-63990/lexapro-oral/details (last visited Jan. 7, 2019).

In 2011, Plaintiff saw Dr. Alireza Raboubi[9] three times for treatment of psychiatric impairments, among other things. (See AR 265-73.) On January 20, 2011, he sought care for depression and anxiety, which he reported experiencing for four to five years. (AR 271-73.) Dr. Raboubi described Plaintiff as anxious but without hopelessness or suicidal ideation, and she increased his dosage of Prozac.[10] (AR 272-73.) On January 24, 2011, Plaintiff saw Dr. Raboubi for panic attacks and high blood pressure and reported that he had stopped taking his medication. (AR 268-70.) Dr. Raboubi diagnosed "panic anxiety syndrome" and "depression" and administered Ativan.[11] (AR 270.) She noted that Plaintiff was agitated and anxious but denied hopelessness, suicidal ideation, or intent to harm others. (AR 269-70.) She prescribed Klonopin.[12] (Id.) On February 4, 2011, Plaintiff saw Dr. Raboubi for anxiety and high blood pressure; treatment notes indicate that he was "completely stable" on Klonopin and Prozac,

---

[9] The record does not indicate Dr. Raboubi's medical specialty.

[10] Prozac is name-brand fluoxetine, which is used to treat depression and panic attacks. See Prozac, WebMD, https://www.webmd.com/drugs/2/drug-6997/prozac-oral/details (last visited Jan. 7, 2019).

[11] Ativan is name-brand lorazepam, a benzodiazepine medication used to treat anxiety. See Ativan, WebMD, https://www.webmd.com/drugs/2/drug-6685/ativan-oral/details (last visited Jan. 7, 2019). It produces a calming effect in the central nervous system. Id.

[12] Klonopin is name-brand clonazepam, a benzodiazepine medication used to treat panic attacks. See Klonopin, WebMD, https://www.webmd.com/drugs/2/drug-920-6006/klonopin-oral/clonazepam-oral/details (last visited Jan. 7, 2019). It produces a calming effect in the central nervous system. Id.

with a stable mood and no evidence of unusual anxiety, depression, or suicidal ideation. (AR 265-66.)

2. *Telecare High Desert Crisis Walk-In-Center*

Plaintiff sought specialized psychiatric treatment at Telecare beginning on April 3, 2012, when he saw psychiatrist Aubrey King. (AR 335.) He visited Telecare 11 times at regular intervals over the next 16 months, usually seeing Dr. King but once psychiatrist Anicia Pollcar instead. (AR 326-36.) He returned some months later, on March 7, 2014, and was treated by psychiatrist Harvey Presser (AR 352) and again on April 7, 2014, when he saw Dr. Pollcar (AR 351). Medical-status exam notes from the Telecare doctors, although difficult to read, indicate that Plaintiff was generally anxious (AR 326-30, 332-35, 352), with a reactive affect (AR 327-35, 351) and hallucinations (AR 328-34, 336, 351-52). The exam notes also state that he was alert (AR 326-36, 351) and that medication was helpful (AR 326-27, 329-31, 333-34, 336).

3. *LaSalle Medical Associates*

Plaintiff sought general medical care at LaSalle numerous times between 2010 and 2015, and a handful of those visits provide detail about his psychiatric impairments. (See AR 338-42, 349-50, 353-407, 497-98.) On May 7, 2010, he sought care for depression, among other things, and was prescribed Lexapro. (AR 338.) On July 5, 2012, the treating provider noted bipolar disorder, anxiety, and depression. (AR 339.) On February 11, March 27, and June 23, 2014, the treating providers noted his anxiety and prescribed Xanax. (AR 349, 403, 406.) On June 10, 2014, Plaintiff sought care for depression and high blood

pressure, and he received a referral for a mental-health exam. (AR 405.)  On September 10, 2014, he saw a physician's assistant, whose "psych" examination notes state that his cognitive function was "intact" and he was taking alprazolam.  (AR 378.)  On December 21, 2014, he saw a different physician's assistant; treatment notes indicate he had stopped taking alprazolam and showed a "mildly depressed affect."  (AR 366, 368-69.)

        4.   *Mission City Community Network*

Beginning on October 23, 2014, Plaintiff saw psychiatrist Salvador Arella at Mission City approximately monthly.  (See AR 408-33, 495-96.)  At each visit, Dr. Arella completed a preprinted form indicating nearly identical assessments: Plaintiff was anxious, sad, and irritable; his medication was beneficial; he had no thoughts of harm to self or others; he was not having visual or auditory hallucinations although he had a history of them; and he was diagnosed with schizoaffective disorder.  (Id.)  Only at the first visit, in October 2014, did Plaintiff display any signs of impaired thought process or abnormal affect (compare AR 432, with AR 408, 410, 412, 414, 416, 418, 420, 422, 424, 426, 428, 430), and only at the first two visits was his speech unusual (compare AR 432, 430, with AR 408, 410, 412, 414, 416, 418, 420, 422, 424, 426, 428).  Although at early visits Dr. Arella checked a box indicating that schizophrenia had to be ruled out (see AR 431-32), he subsequently stopped checking the box and never diagnosed him with that condition (see AR 409, 411, 413, 415, 417, 419, 421,

423, 425, 427, 429).[13]  The purpose of Plaintiff's visits appears largely to have been medication management.  (See AR 413, 415, 417, 419, 421, 423, 425, 427, 429, 431 (indicating "pharmacologic mgmt" at 10 visits).)  While under Dr. Arella's care, Plaintiff took differing combinations of Xanax, Lexapro, Ambien,[14] olanzapine,[15] lithium, Abilify,[16] and Topamax.[17]  (See, e.g., id.)

Plaintiff's condition improved during the course of Dr. Arella's treatment.  At the three most recent visits, Dr. Arella noted that he was "stable."  (AR 409, 411, 413.)  On August 7 and October 2, 2015, Plaintiff told Dr. Arella he was "more better." (AR 410, 412.)  At the October 30, 2015 visit, Dr. Arella

---

[13] Plaintiff stated at the December 2, 2015 hearing that he was "diagnosed as schizophrenic" about "a year, year and a half ago" (AR 42), but it is unclear what in the record he is referring to.

[14] Ambien is name-brand zolpidem and is used to treat insomnia in adults.  See Ambien, WebMD, https://www.webmd.com/drugs/2/drug-9690/ambien-oral/details (last visited Jan. 7, 2019).

[15] Olanzapine is used to treat certain mood conditions, such as schizophrenia and bipolar disorder, and can be used in combination with other medication to treat depression.  See Olanzapine, WebMD, https://www.webmd.com/drugs/2/drug-1644-9274/olanzapine-oral/olanzapine-oral/details (last visited Jan. 7, 2019).  It can decrease hallucinations.  Id.

[16] Abilify is name-brand aripiprazole, an antipsychotic used to treat bipolar disorder, schizophrenia, and, in combination with other drugs, depression.  See Abilify, WebMD, https://www.webmd.com/drugs/2/drug-64439/abilify-oral/details (last visited Jan. 7, 2019).

[17] Topamax is name-brand topiramate and is used to treat bipolar disorder.  See Topiramate (Topamax), Nat'l All. Mental Illness, https://www.nami.org/Learn-More/Treatment/Mental-Health-Medications/Types-of-Medication/Topiramate-(Topamax) (last visited Jan. 7, 2019).

indicated that Plaintiff had "done well with the medicine" and had "no major[] complaints." (AR 408.)

### 5. *Emergency Medical Treatment*

Plaintiff visited the emergency room on May 27, 2014, for high blood pressure and left-shoulder pain. (AR 438.) The treating provider noted that he reported no psychiatric symptoms. (AR 439.)

### B. <u>Examining Psychiatrist Earbin Stanciell</u>

On February 17, 2014, consultative examining psychiatrist Earbin Stanciell performed a complete psychiatric evaluation of Plaintiff. (AR 343-47.) Plaintiff reported his medical history, and Dr. Stanciell reviewed the Telecare treatment notes. (AR 343.) Dr. Stanciell observed that he was "engaged and cooperative" during the evaluation. (AR 343.) He appeared "well kept" and "in no apparent distress." (AR 345.) "There was nothing unusual about his posture, bearing, manner, or hygiene." (<u>Id.</u>) His speech was fluent, his affect appropriate, and his thought processes were linear and goal-directed. (<u>Id.</u>) He exhibited no evidence of auditory or visual hallucinations; reported no obsessions, compulsions or paranoia; and denied suicidal or homicidal ideation. (<u>Id.</u>) He was "alert and oriented to person, place, time, and situation." (<u>Id.</u>) He also had "common sense understandings" and "responded appropriately to imaginary situations requiring social judgment and knowledge of the norms." (<u>Id.</u>) He reported that he was not receiving any psychiatric treatment at the time. (AR 344.)

Dr. Stanciell determined that Plaintiff had moderate difficulty maintaining social functioning and mild difficulty

focusing and maintaining attention, his level of personal
independence was adequate, and he was intellectually and
psychologically capable of performing his activities of daily
living.  (AR 346.)  Accordingly, Dr. Stanciell concluded that he
would have no limitations performing either simple and repetitive
tasks or detailed and complex ones; mild limitations performing
work activities on a consistent basis without supervision,
completing a normal workday or workweek, and handling the usual
stress and demands of gainful employment; and moderate
limitations accepting instructions from supervisors and
interacting with coworkers and the public.  (Id.)

C.  <u>Plaintiff's New Evidence</u>

On March 26, 2016, just over two months after the ALJ issued
her decision, Dr. Arella completed a preprinted "MEDICAL SOURCE
STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)."
(J. Stip., Ex. 1.)  His check-box responses indicated that
Plaintiff had "marked"[18] restrictions in every category listed on
the form.  (<u>See</u> <u>id.</u> at 1-2.)  As to those affecting his "ability
to understand, remember, and carry out instructions," he had
"marked" restrictions in understanding, remembering, and carrying
out short and simple or detailed instructions and in making
judgments on simple or complex work-related decisions.  (<u>Id.</u> at
1.)  As to working and responding to others, Dr. Arella checked
boxes indicating that Plaintiff had "marked" restrictions on
maintaining attendance and punctuality during a workday and

---

[18] "Marked" was defined as a "serious limitation" impacting
the "ability to function independently, appropriately,
effectively, and on a sustained basis."  (J. Stip., Ex. 1 at 1.)

workweek; performing at a consistent pace without more than
regular breaks in a workday; interacting appropriately with the
public, supervisors, and co-workers; sustaining an ordinary
routine without special supervision; and responding appropriately
to changes in a routine work setting. (<u>Id.</u> at 2.)  He listed no
medical or clinical findings supporting these assessments in the
blank spaces provided for that purpose. (<u>Id.</u> at 1-2.)

     The second portion of the statement, titled "EVALUATION FORM
FOR MENTAL DISORDERS," contains Dr. Arella's short answers to
questions about Plaintiff's impairments. (<u>Id.</u> at 4-7.)  It is
dated March 26, 2016, indicating that date as the most recent
examination. (<u>Id.</u> at 4.)  Dr. Arella noted that Plaintiff needed
reminders for his appointments; suffered from depression,
anxiety, and poor memory; had a history of sadness and depression
for four years; and had issues in his marital relationship.
(<u>Id.</u>)  For questions concerning Plaintiff's "mental status," Dr.
Arella responded that he was tearful and labile, had poor
judgment, had an "isolative" affective status, and heard voices.
(<u>Id.</u> at 5.)  As to his "current level of functioning," Dr. Arella
noted that he was "unable to maintain good functioning" for his
daily activities, "could not communicate" socially, was "unable
to complete tasks," and had "poor judgment" in work or worklike
situations. (<u>Id.</u> at 6.)  He was taking Abilify and Xanax and
suffered from schizoaffective disorder. (<u>Id.</u> at 7.)  His
prognosis was "guarded" and he "need[ed] help," but he was
competent to manage funds on his own behalf. (<u>Id.</u>)

     Plaintiff first presented Dr. Arella's medical-source
statement to the Appeals Council, seeking remand in order to

allow the ALJ to consider the new evidence. (AR 256-57.) The Appeals Council "looked at" the document but noted that it was "new information [] about a later time" and therefore did not "affect the decision about whether [Plaintiff] was disabled beginning on or before January 20, 2016." (AR 2.) As a result, the Appeals Council denied review. (AR 1.)

## VI. DISCUSSION

<u>Remand Is Not Warranted Based on Dr. Arella's Medical-Source Statement</u>

Plaintiff argues that the new evidence he submitted with his appeal demonstrates that the ALJ's RFC assessment was "not based on substantial evidence and is a result of legal error." (J. Stip. at 5-9.) He asks the Court to remand for further proceedings so that the ALJ can consider the new evidence.[19] (<u>Id.</u> at 9.) For the reasons discussed below, remand is not warranted.

### A. <u>Applicable Law</u>

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ should consider all the medical evidence in the record and "explain in [his] decision the weight given to . . . [the] opinions from

---

[19] Most of the "new" evidence submitted to the Appeals Council was already in the record. (<u>See</u> AR 2.) In addition to Dr. Arella's March 2016 opinion, the other truly new evidence consisted of treatment notes from Mission City from July through September 2016. (<u>Id.</u>) Those notes are from more than six months after the relevant period ended, however, and Plaintiff does not discuss them. Accordingly, the Court doesn't either.

treating sources, nontreating sources, and other nonexamining sources." § 404.1527(e)(2)(ii); see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record"). In making an RFC determination, the ALJ may consider those limitations supported in the record and need not consider properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC any findings from treating-physician opinions that were "permissibly discounted").

At the time of the relevant proceedings here, Social Security Administration regulations allowed claimants to submit "new and material evidence to the Appeals Council and require[d] the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relate[d] to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also § 404.970(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163. Remand is necessary when a "reasonable possibility" exists

16

that "the new evidence might change the outcome of the administrative hearing." <u>Borrelli v. Comm'r of Soc. Sec.</u>, 570 F. App'x 651, 652 (9th Cir. 2014).

Medical examinations taking place after the ALJ's decision may still relate to a claimant's conditions "during the relevant time period." <u>Handy v. Colvin</u>, No. CV 14-02149-SH., 2014 WL 4895678, at *3 (C.D. Cal. Sept. 30, 2014). In such circumstance, the Appeals Council errs in dismissing the evidence solely because it was dated after the ALJ's decision. <u>See</u> <u>id.</u>; <u>see also</u> <u>Baccari v. Colvin</u>, No. EDCV 13-2393 RNB., 2014 WL 6065900, at *2 (C.D. Cal. Nov. 13, 2014) (that claimant submitted evidence to Appeals Council that was "generated after the ALJ's decision . . . is not dispositive of whether the evidence was chronologically relevant" and collecting cases). This is especially true when the plaintiff's condition is "chronic" or relatively "longstanding." <u>See</u> <u>Baccari</u>, 2014 WL 6065900, at *2; <u>Bergmann v. Apfel</u>, 207 F.3d 1065, 1070 (8th Cir. 2000) (finding that posthearing evidence required remand because it concerned deterioration of "relatively longstanding" impairment).

B.  <u>Analysis</u>

Even assuming Dr. Arella's medical-source opinion concerned the relevant time period, it does not undermine the ALJ's decision that Plaintiff could perform a limited range of medium work. (<u>See</u> AR 25-30.) His medical records showed that despite a history of depression, anxiety, auditory hallucinations, and paranoia (AR 28, 326-36, 351-52, 408-33), regular treatment and medication stabilized his condition (AR 265, 269, 275-75, 326-27, 329-31, 333-34, 336, 408-33). For example, after she had

17

prescribed Plaintiff Lexapro, Dr. Nester found that he was
"negative for psychiatric symptoms," without "unusual anxiety or
evidence of depression." (AR 275-76.)  Dr. Raboubi described him
as "completely stable on [K]lonopin." (AR 265.)  When he visited
the emergency room on May 27, 2014, he reported no psychiatric
symptoms to the treating physician. (AR 439.)  Dr. Arella noted
that Plaintiff had "done well with the medicine" and had "no
major complaints." (AR 408.)  As the ALJ discussed, Dr. Arella's
most recent treatment notes generally indicated that he was
feeling better and was assessed as stable. (AR 28 (citing AR
408-33).)  Medical records indicated that since beginning his
medication regimen, he had not expressed suicidal ideation (AR
265, 270, 272, 408-33) and more recently had not reported any
auditory hallucinations (AR 408-33).[20]

Despite substantial evidence in the record that Plaintiff
had few if any limitations arising from his mental impairments,
the ALJ limited him to "frequent supervisory contact, occasional
contact with coworkers, and no contact with the public," giving
him the benefit of the doubt. (AR 25.)  Substantial evidence
supported the finding that he was not disabled. See Warre v.
Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (stating
that "[i]mpairments that can be controlled effectively with
medication are not disabling for the purpose of determining
eligibility for SSI benefits"); Carey v. Berryhill, No. 16cv2891-
CAB (BLM), 2017 WL 3457386, at *5 (S.D. Cal. Aug. 11, 2017)

---

[20] Plaintiff claimed at the hearing to hear voices every day
(AR 42), but the ALJ found those statements not credible (AR 26),
which he has not challenged on appeal.

(finding plaintiff diagnosed with anxiety and panic disorder not disabled when medical records showed symptoms were improving and were controlled with medication), accepted by 2017 WL 4856874 (S.D. Cal. Aug. 29, 2017).

Plaintiff claims that remand is necessary because consulting examiner Dr. Stanciell, whose opinion the ALJ gave "partial weight," found that Plaintiff had only moderate and mild difficulties and might have changed his view with access to Dr. Arella's March 2016 opinion. (J. Stip. at 8.) There is no "reasonable possibility" of that. See Borrelli, 570 F. App'x at 652.

As Defendant correctly notes (J. Stip. at 12-14), Dr. Arella's March 26, 2016 medical-source statement is entitled to little weight given its conclusory nature. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") Indeed, that portion of the medical opinion listing Plaintiff's limitations as "marked" is a check-box form with no medical or clinical findings provided in the spaces to support the assessment (see J. Stip., Ex. 1 at 1-3) and thus is properly discounted. See Van Orsdol v. Colvin, 671 F. App'x 410, 410 (9th Cir. 2016) (physician's opinion properly rejected when it was "unexplained and unsupported by evidence"); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may reject opinions that consist "primarily of a standardized, check-the-box form").

Moreover, the new evidence contradicts Dr. Arella's numerous

19

prior treatment notes indicating that Plaintiff's symptoms were under control with medication and that he was feeling better, which the ALJ properly noted. (AR 28 (citing AR 409-13, 417, 419, 422-23, 425-26, 428-29)); see Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended) (ALJ properly disregarded doctor's report when it varied from his treatment notes); O'Neal v. Barnhart, No. EDCV 04-01007-MAN., 2006 WL 988253, at *8 (C.D. Cal. Apr. 13, 2006) (inconsistency between treating physician's medical opinion and examination notes was specific and legitimate reason for rejecting opinion). In addition, Dr. Stanciell did review the Telecare treatment notes (see AR 343), which were similar to Dr. Arella's notes (compare AR 326-36, with AR 408-33). Dr. Stanciell was unlikely to give any weight to another doctor's opinion so flatly undermined by the doctor's own treatment notes and the rest of the record, including the Telecare notes.

Because Dr. Arella's statement does not render the ALJ's RFC assessment unsupported by substantial evidence, remand is not warranted. See Bayliss, 427 F.3d at 1217; Marin v. Astrue, No. CV 11-09331 AJW., 2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) (declining to reverse when new evidence submitted to Appeals Council did "not alter the conclusion that the ALJ's decision was supported by substantial evidence in the record as a whole").

VII. CONCLUSION

    Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[21] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.


DATED: January 8, 2019                    _____
                                          JEAN ROSENBLUTH
                                          U.S. Magistrate Judge

---

    [21] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."